# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE SALVATION ARMY, an Illinois non-profit corporation,

    Plaintiff,

v.

THE NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, CRYSTAL CAREY, in her official capacity as the General Counsel for the National Labor Relations Board, and ELIZABETH KERWIN, in her official capacity as the Regional Director of NLRB Region 7

    Defendant.

Case No. 26-cv-_____

Hon. _____

Magistrate Judge _____

---

**BODMAN PLC**
*Attorneys for Plaintiff*
John T. Below (P48677)
Gary S. Fealk (P53819)
Amanda McSween Empey (P84594)
201 W. Big Beaver Road, Suite 500
Troy, MI  48084
(248) 743-6000
jbelow@bodmanlaw.com
gfealk@bodmanlaw.com
aempey@bodmanlaw.com

---

## VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff, The Salvation Army, sets forth its Complaint seeking injunctive and declaratory relief against Defendants, The National Labor Relations Board ("NLRB" or "the Board"), Crystal Carey, in her official capacity as General Counsel for the NLRB, and Elizabeth Kerwin in her official capacity as Regional Director of NLRB Region 7, alleging as follows:

## PARTIES

1. The Salvation Army is an evangelical sect of the universal Christian Church, which is organized as a non-profit corporation under Illinois law.

2. The Salvation Army regularly carries out its mission and provides services in the Eastern District of Michigan.

3. The NLRB is an independent federal agency created by Congress in 1935 to administer the National Labor Relations Act ("NLRA"), the primary law governing relations between unions and employers in the private sector.

4. The NLRB maintains offices throughout the United States, including in Detroit, Michigan.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because The Salvation Army's claims arise from its rights under the First Amendment of the United States Constitution.

6. This Court also has jurisdiction over original suits which allege that the NLRB has deprived individuals "of a 'right' assured to them by Congress … to prevent deprivation of a right so given." *Leedom v. Kyne*, 358 U.S. 184, 189 (1958).

7. The Salvation Army's claims for declaratory relief and injunctive relief are authorized by 28 U.S.C. §§ 1651, 2201 and 2202; Federal Rules of Civil Procedure 57 and 65; and the general legal and equitable powers of this Court.

8. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this lawsuit occurred in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

### *About The Salvation Army*

9. The Salvation Army is an international Christian church, which rests on the foundation of the "Soldier's Covenant", a statement of beliefs and promises declaring Jesus Christ as Lord and Savior and to grow in grace through worship and service. **Exhibit 1**, *Soldier's Covenant*.

10. The Salvation Army was founded in London, England by clergyman William Booth in 1865 when he abandoned the concept of the traditional church pulpit in favor of taking the gospel of Jesus Christ directly to the people. **Exhibit 2**, *History of the Salvation Army*.

4925-1042-1638_1

11. By 1878, Booth's church adopted the name The Salvation Army and his followers became known as Salvationists. **Ex. 2**.

12. The Salvationists evangelized people across the world, and today, The Salvation Army serves in over 100 countries, offering the message of God's healing and hope to all those in need. **Ex. 2**.

13. The Salvation Army promulgates the following Mission Statement:

> The Salvation Army, an international movement, is an evangelical part of the universal Christian Church. Its message is based on the Bible. Its ministry is motivated by the love of God. Its mission is to preach the gospel of Jesus Christ and to meet human needs in His name without discrimination.

### *The Southeast Michigan Adult Rehabilitation Center*

14. One of the promises Salvationists make in the Soldier's Covenant is to "be faithful to the purposes for which God raised up The Salvation Army, sharing the good news of Jesus Christ, endeavouring to win others to him, and in his name caring for the needy and the disadvantaged." **Ex. 1**.

15. To that end, The Salvation Army operates Adult Rehabilitation Centers ("ARC"), which serve people – generally without any charge – seeking help for many social and life issues, including those suffering from alcohol and substance abuse.

16. ARC programming focuses on the spiritual, physical and emotional well-being of the participants.

17. ARC participants are required to participate in all program activities, including attending worship services, counseling sessions, and classes.

18. The Salvation Army has operated the Southeast Michigan Adult Rehabilitation Center ("SEMI ARC") in Detroit, Michigan since 1895.

19. To fund The Salvation Army's Christian services, it solicits donations – both in the form of direct financial support and used goods, including cars, clothing, furniture, and household items.

20. To turn the used goods into usable funds, The Salvation Army sells used goods at thrift stores across the country, including 30 thrift stores in Southeast Michigan that directly fund the mission and work of the SEMI ARC.

21. Upon hire, all SEMI ARC employees acknowledge that The Salvation Army is a church, and that they are expected to support and not undermine its religious mission.

22. All SEMI ARC employees are participants in The Salvation Army's religious mission – whether working in humanitarian services, rehabilitation programs, church services, fundraising or administration.

23. As such, "it is expected that all employees of The Salvation Army will endeavor to relate to those whom The Salvation Army serves in the spirit of Christian love, consistent with our Mission Statement[.]" **Exhibit 3**, *2024 Handbook Welcome*.

24. All SEMI ARC employees are expected to abide by the procedures and work rules laid out in its Employee Handbook, which was most recently updated in 2024. **Ex. 3.**

### *Jamie Young-Anderson's NLRB Charge*

25. Jamie Young-Anderson was hired by the SEMI ARC on March 31, 2015 as a Manager-in-Training, and she eventually voluntarily transferred to a Dispatcher position in January 2016.

26. After years of unprofessional and disrespectful conduct, Young-Anderson was put on a Performance Improvement Plan ("PIP") on August 10, 2023, and she was terminated on April 15, 2024 for violating her PIP by exhibiting very aggressive body language towards, and screaming at, her supervisor.

27. On October 25, 2024, Young-Anderson filed an Unfair Labor Practice Charge with the NLRB alleging that The Salvation Army violated Section 8(a)(1) of the NLRA by: (1) terminating her in retaliation for protected concerted activity, and (2) maintaining overbroad work rules. **Exhibit 4**, *Young-Anderson NLRB Charge*.

28. On January 29, 2025, Young-Anderson filed a First Amended Charge; however, the allegations contained therein were identical to those contained in the October 25, 2024 Charge. **Exhibit 5**, *Young-Anderson First Amended NLRB Charge*.

29. Young-Anderson requested to withdraw the portion of her Charge alleging that The Salvation Army discharged her in violation of Section 8(a)(1) of the Act, and the Regional Director, Elizabeth Kerwin approved Charging Party's request on February 19, 2025. **Exhibit 6**, *02.19.25 Letter*.

30. Consequently, the only remaining claim before the NLRB is that the Army allegedly violated Section 8(a)(1) by maintaining certain overly broad rules. **Ex. 6.**

31. On May 1, 2025, the NLRB Acting General Counsel, through Region 7 Regional Director Elizabeth Kerwin, issued a Complaint and Notice of Hearing on Young-Anderson's behalf. **Exhibit 7**, *NLRB Complaint and Notice of Hearing*.

32. On May 13, 2025, The Salvation Army filed its Answer to the NLRB Complaint vehemently denying the allegations contained therein and setting forth its affirmative defenses.

33. On January 7, 2026, The Salvation Army filed an Amended Answer to the NLRB Complaint to resolve any possible ambiguity regarding its position regarding the NLRB's lack of jurisdiction in this matter. **Exhibit 8**, Respondent*'s Amended Answer to NLRB Complaint*.

34. The NLRB Administrative Law Judge hearing date was rescheduled multiple times and is currently scheduled for January 27, 2026. **Exhibit 9**, *08.22.25 Order Rescheduling Hearing*.

### *The NLRB's exertion of jurisdiction over The Salvation Army is a violation of the its First Amendment Rights.*

35. The First Amendment of the U.S. Constitution prohibits government interference with the internal affairs of religious organizations.

36. As an agency created by Congress, the NLRB is subject to the limitations imposed by the First Amendment to protect religious organizations. *Catholic Bishop of Chicago*, 440, 499 U.S. 490 (1979) ("That there are constitutional limitations on the Board's actions has been repeatedly recognized by [the Supreme] Court even while acknowledging the broad scope of the grant of jurisdiction.").

37. The NLRB cannot exercise jurisdiction over church-operated organizations, such as The Salvation Army, because doing so "presents a significant risk that the First Amendment will be infringed." *Catholic Bishop*, 440 U.S. at 502.

38. As explained by the Supreme Court,

> The resolution of such charges by the Board, in many instances, will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the [organization's] religious mission. <u>It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions.</u>

*Catholic Bishop*, 440 U.S. at 507.

39. Courts and the NLRB have adopted a three-prong test (the "*Great Falls* test") to determine when the NLRB is constitutionally barred from asserting

jurisdiction over a religious employer. *University of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002); *Bethany College*, 369 NLRB No. 98 (June 10, 2020); *Saint Leo Univ. Inc.*, 373 NLRB No. 121 (Sept. 30, 2024).

40. Under the *Great Falls* test, the NLRB must decline to exercise jurisdiction if the employer: (1) holds itself out to the public as a religious institution; (2) is a nonprofit; (3) is religiously affiliated. *Great Falls*, 278 F.3d at 1347.

41. The Salvation Army unequivocally meets all three elements of the *Great Falls* test because:

   a. The Salvation Army publicly identifies as a religious organization, offering a religious educational environment at SEMI ARC to program participants, as stated in Paragraphs 9 through 24 of this Complaint.

   b. The Salvation Army is a recognized by the Internal Revenue Service as a 501(c)(3) nonprofit religious organization. **Exhibit 8**, *IRS Letter*.

   c. As an international church with approximately 1.8 million followers, The Salvation Army is inherently religiously affiliated as stated in Paragraphs 9 through 24 of this Verified Complaint.

42. Consequently, the NLRB violates The Salvation Army's First Amendment rights by exerting jurisdiction over it.

43. The NLRB is bound by Supreme Court precedent in *Catholic Bishop* to dismiss its complaint against The Salvation Army.

*Despite being on notice of its constitutional obligation to dismiss the Complaint against The Salvation Army, the NLRB has failed to do so, thus continuing to violate the Salvation Army's First Amendment Rights.*

44. On December 29, 2025, The Salvation Army filed its Motion to Dismiss with the NLRB Executive Secretary notifying the NLRB that it cannot exert jurisdiction over The Salvation Army because doing so would violate The Salvation Army's First Amendment right to manage its employees consistent with its religious mission pursuant to *Catholic Bishop* and its progeny of cases. **Exhibit 9**, *Motion to Dismiss NLRB Complaint*.

45. As of the date of this filing, the NLRB has not dismissed its Complaint against The Salvation Army, despite its First Amendment obligation to do so.

*After almost a year of standstill, the NLRB now has a quorum, enabling it to function and decide cases.*

46. The NLRB has lacked a quorum since President Trump removed Gwynne Wilcox on January 27, 2025.

47. Consequently, for the majority of time this Charge has been pending, the NLRB was unable to decide cases.

48. On January 7, 2026, Scott Mayer and James D. Murphy were sworn in as NLRB members, restoring the requisite quorum of at least three members to decide cases.

49. The NLRB's restored quorum imposes new urgency on this matter because it is now empowered to make decisions, including dismissing Young-Anderson's First Amended Charge and related NLRB complaint for lack of jurisdiction.

50. Yet, despite being on notice of its obligation to dismiss Young-Anderson's First Amended Charge and related NLRB complaint, the NLRB has continued to unconstitutionally exert jurisdiction over The Salvation Army.

## COUNT I: INJUNCTIVE RELIEF

51. The Salvation Army realleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

52. As a religious non-profit under the *Great Falls* test, The Salvation Army has a right to manage its employees free from NLRB interference under the First Amendment.

53. Despite being on notice that The Salvation Army qualifies as a religious non-profit under the *Great Falls* test, the NLRB has continued to unconstitutionally exert jurisdiction over The Salvation Army.

54. As a result, The Salvation Army's First Amendment rights have been – and continue to be – violated each day that passes during which the NLRB unconstitutionally exercises jurisdiction over it.

55. Subjecting The Salvation Army to the NLRB hearing on January 27, 2026 will further violate its First Amendment rights by unconstitutionally probing into the furtherance of its religious mission. *See Catholic Bishop,* 440 U.S. at 507 ("It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions.")

56. A temporary restraining order – with a preliminary injunction to follow – is required <u>prior to January 26, 2026</u> to avoid the irreparable injury that The Salvation Army would suffer if the January 27, 2026 NLRB hearing is allowed to proceed.

57. The Salvation Army has a strong likelihood of success on the merits in this action because, as noted by the NLRB itself, the *Great Falls* test is a "bright-line test" designed to "prevent the type of <u>intrusive inquiries</u> that the Supreme Court prohibited in *Catholic Bishop* and has found problematic in other contexts." *Bethany Coll.* 369 NLRB No. 98 at *5.

58. As described in Paragraph 41, The Salvation Army plainly meets all three elements of the bright-line *Great Falls* test.

59. The NLRB will experience no harm if this Court issues the injunctive relief requested.

60. Young-Anderson will experience no harm if this Court issues the injunctive relief requested because the only claims remaining involve allegations of overbroad work rules, which no longer apply to her; Young-Anderson is not eligible for reinstatement because she has withdrawn the portion of her charge based on her termination. **Ex. 7**.

61. The public interest would be served by the issuance of an injunction because halting the NLRB's unconstitutional exercise of jurisdiction over a church would uphold the U.S. Constitution and the very framework upon which this country rests. *See Catholic Bishop*, 440 U.S. at 501 ("The values enshrined in the First Amendment plainly rank high on the scale of our national values.").

62. The Salvation Army has no adequate remedy at law because cannot be fully compensated through an award of damages.

## COUNT II: DECLARATORY JUDGMENT

63. The Salvation Army realleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

64. The NLRB refuses to accept that it cannot exert jurisdiction over The Salvation Army, despite being on notice of its constitutional obligation that it may not do so under *Catholic Bishop* and the *Great Falls* test.

65. As such, an actual controversy exists between the parties regarding their respective rights and obligations under the First Amendment of the U.S. Constitution.

66. Accordingly, The Salvation Army seeks, under 28 U.S.C. § 2201, a declaration from this Court that the NLRB does not have jurisdiction over The Salvation Army and order the NLRB to dismiss Case No. 07-CA-353233.

## REQUEST FOR RELIEF

WHEREFORE, The Salvation Army respectfully requests that the Court:

(1) Issue a temporary restraining order and preliminary injunction against the NLRB, Crystal Carey, and Elizabeth Kerwin <u>prior to January 26, 2026</u>, requiring them to stay all proceedings related to NLRB Case 07-CA-353233, including canceling the hearing scheduled for January 27, 2026, until disposition of this action;

(2) Declare that the NLRB does not have jurisdiction over The Salvation Army pursuant to the First Amendment;

(3) Order the NLRB to dismiss its Complaint in Case No. 07-CA-3535233 against The Salvation Army;

(4) Award The Salvation Army its costs and reasonable attorneys' fees incurred if applicable and provided by law;

4925-1042-1638_1

(5) Grant The Salvation Army such further relief that this Court deems just, proper, and equitable.

            Respectfully submitted,

            BODMAN PLC

            */s/ John T. Below*
            John T. Below (P48677)
            Gary S. Fealk (P53819)
            Amanda McSween Empey (P84594)
            201 W. Big Beaver Road, Suite 500
            Troy, MI  48084
            (248) 743-6000
            jbelow@bodmanlaw.com
            gfealk@bodmanlaw.com
            aempey@bodmanlaw.com
            *Attorneys for Plaintiff*

Dated: January 12, 2026

(Verification Follows on Next Page)

## VERIFICATION

I, Envoy Jacqulynn Idzior, declare under penalty of perjury that I am duly authorized to verify the complaint for injunctive and declaratory relief on behalf of Plaintiff; that I have personal knowledge of the factual allegations in said complaint; and that I believe the foregoing are true and accurate to the best of my knowledge, information and belief.

Dated: January 12, 2026       By: _____
　　　　　　　　　　　　　　　　　Envoy Jacqulynn Idzior
　　　　　　　　　　　　　　　　　Administrator of The Salvation Army's Southeastern Michigan Adult Rehabilitation Center

4925-1042-1638_1