# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE SALVATION ARMY, an Illinois
non-profit corporation,

     Plaintiff,

v.

THE NATIONAL LABOR
RELATIONS BOARD a federal
administrative agency, CRYSTAL
CAREY, in her official capacity as the
General Counsel for the National Labor
Relations Board, and ELIZABETH
KERWIN, in her official capacity as
the Regional Director of NLRB Region
7

     Defendant.

Case No. 26-cv-10105-MFL-CI

Hon. Matthew F. Leitman

Magistrate Judge Curtis Ivy, Jr.

---

**BODMAN PLC**
*Attorneys for Plaintiff*
John T. Below (P48677)
Gary S. Fealk (P53819)
Amanda McSween Empey (P84594)
Bodman PLC
201 W. Big Beaver Road, Suite 500
Troy, MI  48084
(248) 743-6000
jbelow@bodmanlaw.com
gfealk@bodmanlaw.com
aempey@bodmanlaw.com

---

# THE SALVATION ARMY'S MOTION FOR
# TEMPORARY RESTRAINING ORDER
# AND SHOW CAUSE ORDER

1

Plaintiff The Salvation Army moves for a temporary restraining order and preliminary injunction, pursuant to Fed. R. Civ. P. 65, with notice to Defendants The National Labor Board ("NLRB" or "Board"), Crystal Carey, in her official capacity as the General Counsel for the National Labor Relations Board, and Elizabeth Kerwin, in her official capacity as the Regional Director of NLRB Region 7. The Salvation Army seeks: (1) an order prior to January 26, 2026 requiring the NLRB, Carey, and Kerwin to administratively stay NLRB Case 07-CA-353233, including cancelling the hearing scheduled to begin January 27, 2026 at 9:00 a.m., and (2) to show cause why a preliminary injunction should not issue until this action is resolved.

It is well-established that the NLRB cannot exert jurisdiction over church-operated non-profits because doing so "presents a significant risk that the First Amendment will be infringed." *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1978). If an employer (1) holds itself out to the public as a religious institution, (2) is a nonprofit, and (3) is religiously affiliated, then the NLRB must decline jurisdiction. *University of Great Falls v. NLRB*, 278 F.3d 1335, 1347 (D.C. Cir. 2002); *Bethany College*, 369 NLRB No. 98 at 11 (June 10, 2020). The Salvation Army plainly meets all three elements of the *Great Falls* test.

On December 29, 2025, the Salvation Army, an international church and 501(c)(3) nonprofit, notified the NLRB through a motion to dismiss NLRB Case No.

07-CA-353233 of its obligation to decline jurisdiction over the Salvation Army pursuant to *Catholic Bishop* and its progeny of cases. However, despite having such notice, the NLRB continues to unconstitutionally exert jurisdiction over the Salvation Army, and the NLRB hearing regarding *alleged overbroad work rules* is still scheduled for January 27, 2026. The Salvation Army will be irreparably harmed by being subjected to this hearing because "the very process of inquiry leading to findings and conclusions" will violate the Salvation Army's First Amendment rights. *Catholic Bishop*, 440 U.S. 502.

The Salvation Army respectfully requests that this Court issue a temporary restraining order and order to show cause in the form attached as Exhibit 1 of the attached Brief. The Salvation Army further requests the issuance of a preliminary injunction consistent with the temporary restraining order after the show cause hearing. The Salvation Army relies on the accompanying Brief and the allegations in its Verified Complaint, verified by Envoy Jacqulynn Idzior, Administrator for the Salvation Army's Southeast Michigan Adult Rehabilitation Center, for the relief sought in this Motion.

4924-4579-8276_1

Respectfully submitted,

BODMAN PLC


*/s/ John T. Below*
John T. Below (P48677)
Gary S. Fealk (P53819)
Amanda McSween Empey (P84594)
Bodman PLC
201 W. Big Beaver Road, Suite 500
Troy, MI  48084
(248) 743-6000
jbelow@bodmanlaw.com
gfealk@bodmanlaw.com
aempey@bodmanlaw.com

*Attorneys for Plaintiff*

Dated: January 14, 2026

4

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE SALVATION ARMY, an Illinois
non-profit corporation,

     Plaintiff,

v.

THE NATIONAL LABOR
RELATIONS BOARD,

     Defendant.

Case No. 26-cv-10105-MFL-CI

Hon. Matthew F. Leitman

Magistrate Judge Curtis Ivy, Jr.

**BODMAN PLC**
*Attorneys for Plaintiff*
John T. Below (P48677)
Gary S. Fealk (P53819)
Amanda McSween Empey (P84594)
Bodman PLC
201 W. Big Beaver Road, Suite 500
Troy, MI  48084
(248) 743-6000
jbelow@bodmanlaw.com
gfealk@bodmanlaw.com
aempey@bodmanlaw.com

# BRIEF IN SUPPORT OF THE SALVATION ARMY'S MOTION
# FOR TEMPORARY RESTRAINING ORDER
# AND SHOW CAUSE ORDER

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES .......................................................... ii

CONTROLLING AUTHORITY ..................................................... iii

STATEMENT OF ISSUES PRESENTED...............................................iv

INTRODUCTION .......................................................................1

FACTUAL BACKGROUND............................................................2
   I.   About The Salvation Army .......................................................2
   II.  The Southeast Michigan Adult Rehabilitation Center ...................4
   III. Jamie Young-Anderson's NLRB Charge.....................................5

STANDARD OF REVIEW ..............................................................7

ARGUMENT .............................................................................7
   I.   This Court has jurisdiction to intervene when the NLRB exceeds its statutory authority...........................................................7
   II.  The Salvation Army has a strong likelihood of success on the merits because it plainly meets all three elements of the *Great Falls* test, which dictates that the Board is constitutionally barred from exerting jurisdiction over it. .............................................................8
      A.  The First Amendment prohibits Board interference in religious organizations' management of their employees under *Catholic Bishop* and its progeny of cases. ...............................................9
      B.  The Salvation Army unequivocally meets all three elements of the *Great Falls* test, and consequently, the Board is constitutionally barred from asserting jurisdiction over it. ...............................11
   III. The Salvation Army would suffer irreparable injury if the January 27, 2026 NLRB hearing is allowed to proceed.....................................16
   IV. Staying NLRB Case No. 07-CA-353233 through a TRO would not cause any harm to either the NLRB or Young-Anderson...........................18
   V.  The public interest would be served by upholding the Salvation Army's constitutional rights under the First Amendment. .........................19

CONCLUSION AND RELIEF REQUESTED ....................................20

i

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Bethany College*, 369 NLRB No. 98 (2020).........................................2, 8, 10, 11, 17

*Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 828 (D.C. Cir. 2020)....9

*Hanna Boys Center*, 284 NLRB 1080 (1987)................................................. 13, 14

*Jewish Community Center of Greater Columbus*, 2025 NLRB REG. DIR. DEC. LEXIS 20.................................................................................................10

*Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) ...........................................3

*Leedom v. Kyne*, 358 U.S. 184, 189 (1958) ........................................................ iv, 8

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 403 (2024) ........................19

*Mich. Coal. of Radioactive Material Users, Inc., v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) .......................................................................................................7

*NE Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6tth Cir. 2006).......................................................................................................................7

*New York v. Cathedral Academy*, 434 U.S. 125, 133 (1977) .................................16

*NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979) . 1, 2, 3, 8, 9, 12, 16, 17, 19

*Pacific Lutheran University*, 361 NLRB No. 157 (2014) ......................................13

*Saint Xavier Univ.*, 365 NLRB 566, 572-573 (2017) ...................................... 12, 13

*Saints v. Amos*, 483 U.S. 327, 336 (1987) .............................................................16

*Seattle University*, 364 NLRB No. 84 (2016).......................................................13

*University of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002).... 2, 10, 11, 13, 15, 16, 17

## Rules

Fed.R.Civ.P. 65 .......................................................................................................2

LR 7.1.......................................................................................................................2

4924-4579-8276_1

## <u>CONTROLLING AUTHORITY</u>

*Bethany College*, 369 NLRB No. 98 (2020)

*Jewish Community Center of Greater Columbus*, 2025 NLRB REG. DIR. DEC. LEXIS 20

*Leedom v. Kyne*, 358 U.S. 184, 189 (1958)

*NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1978)

iii

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.   Whether the Eastern District of Michigan has jurisdiction in this matter where the NLRB has exceeded its jurisdictional authority pursuant to *Leedom v. Kyne*.

Plaintiff Answers: Yes.

II.   Whether The Salvation Army has a strong likelihood of success on the merits considering it plainly meets all three elements of the *Great Falls* test, which dictates that the Board is constitutionally barred from exerting jurisdiction over it.

Plaintiff Answers: Yes.

III.   Whether The Salvation Army would suffer irreparable injury if the January 27, 2026 NLRB hearing is allowed to proceed.

Plaintiff Answers: Yes.

IV.   Whether Staying NLRB Case No. 07-CA-353233 through a TRO would cause any harm to either the NLRB or Young-Anderson.

Plaintiff Answers: No.

V.   Whether the public interest would be served by upholding the Salvation Army's constitutional rights under the First Amendment.

Plaintiff Answers: Yes.

4924-4579-8276_1

## <u>INTRODUCTION</u>

The Salvation Army is an evangelical sect of the universal Christian Church, and as such, the National Labor Relations Board ("NLRB" or "Board") does not have jurisdiction over it because the Board's interference in the Salvation Army's management would unlawfully impose upon its First Amendment right to further its religious mission as it sees fit. *See NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979). In the subject NLRB Case No. 07-CA-353233, the NLRB General Counsel, through Region 7 Regional Director Elizabeth Kerwin, alleges that the Salvation Army maintained certain workplace policies that allegedly interfere with employee rights under Section 7 of the National Labor Relations Act ("NLRA"). However, the rules in question are part of a framework designed to ensure that all Salvation Army staff further the Salvation Army's religious mission and uphold its moral standards in their workplace conduct. Adjudicating the legality of the Salvation Army's religiously motivated policies would require impermissible governmental interpretation of the Salvation Army's faith-based beliefs and would interfere with its overall religious autonomy.

Through its motion to dismiss filed with the NLRB, the Salvation Army notified the NLRB of its obligation to decline jurisdiction on December 29, 2025. However, as of the date of this filing, the NLRB has continued to unconstitutionally exert jurisdiction over the Salvation Army, with the NLRB's General Counsel's

1

office filing a response brief on January 6, 2026. Moreover, the hearing regarding the alleged overbroad work rules is still scheduled for January 27, 2026. The Salvation Army will be irreparably harmed by being subjected to this hearing because "the very process of inquiry leading to findings and conclusions" will violate the Salvation Army's First Amendment rights. *Catholic Bishop*, 440 U.S. at 502. The hearing simply should not happen at this time (or perhaps ever).

The Salvation Army seeks this Court to intervene and protect its First Amendment rights by issuing: (1) a temporary restraining order requiring the NLRB, Carey, and Kerwin to administratively stay NLRB Case No. 07-CA-353233, including canceling the January 27, 2026 hearing; and (2) an order directing the NLRB to show cause why a preliminary injunction, consistent with the TRO, should not issue until this action is adjudicated.

## FACTUAL BACKGROUND

### I.   About The Salvation Army.

The Salvation Army is an international Christian church and 501(c)(3) non-profit, which rests of the foundation of the "Soldier's Covenant", a statement of beliefs and promises declaring Jesus Christ as Lord and Savior and to grow in grace through worship and service. **Exhibit 2**, *Soldier's Covenant*; **Exhibit 3**, *IRS Letter*;

2

**Verified Complaint** ¶ 9.[1] The Salvation Army was founded by clergyman William Booth in 1865 when he abandoned the concept of the traditional church pulpit in favor of taking the gospel of Jesus Christ directly to the people. **Exhibit 4**, *History of the Salvation Army;* **Compl**. *¶* 10. By 1878, Booth's church adopted the name The Salvation Army and his followers became known as Salvationists. **Ex. 4**; **Compl.** ¶ 11. The Salvationists evangelized people across the world, and today, the Army serves in over 100 countries, offering the message of God's healing and hope to all those in need. **Ex. 4**; **Compl.** ¶ 12. The Salvation Army promulgates the following Mission Statement:

> The Salvation Army, an international movement, is an evangelical part of the universal Christian Church. Its message is based on the Bible. Its ministry is motivated by the love of God. Its mission is to preach the gospel of Jesus Christ and to meet human needs in His name without discrimination.

**Exhibit 5**, *Mission Statement*; **Compl.** ¶ 13.

---

[1] The allegations in a verified complaint "have the same force and effect as an affidavit[.]" *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

4924-4579-8276_1

## II.    The Southeast Michigan Adult Rehabilitation Center.

One of the promises Salvationists make in the Soldier's Covenant is to "be faithful to the purposes for which God raised up The Salvation Army, sharing the good news of Jesus Christ, endeavoring to win others to him, and in his name caring for the needy and the disadvantaged." **Ex. 2**. To that end, the Salvation Army operates Adult Rehabilitation Centers ("ARC"), which serve people – generally without any charge – seeking help for many social and life issues, including problems related to substance and alcohol abuse. **Compl. ¶ 15**. ARC programming focuses on the physical, emotional, and spiritual well-being of the participants. **Compl. ¶ 16**. ARC participants are required to participate in all program activities, including attending counseling sessions, classes, and worship services. **Compl. ¶ 17**.

The Salvation Army has operated the Southeast Michigan Adult Rehabilitation Center ("SEMI ARC") in Detroit, Michigan since 1895. **Compl. ¶ 18**. To fund the Salvation Army's Christian services, it solicits donations – both in the form of direct financial support and used goods, including cars, clothing, furniture, and household items. **Compl. ¶ 19**. To turn the used goods into usable funds, the Salvation Army sells the used goods at thrift stores across the country, including 30 thrift stores in Southeast Michigan that directly fund SEMI ARC. **Compl. ¶ 20**.

Upon hire, all SEMI ARC employees acknowledge that the Salvation Army is a church, and that they are expected to support and not undermine its religious

4

mission. **Exhibit 6**, *ARC Job Descriptions*; Compl. ¶ 21. All SEMI ARC employees are participants in the Salvation Army's religious mission – whether working in humanitarian services, rehabilitation programs, church services, fundraising or administration. **Compl**. ¶ 22. As such, "it is expected that all employees of The Salvation Army will endeavor to relate to those whom The Salvation Army serves in the spirit of Christian love, consistent with our Mission Statement[.]" **Exhibit 7**, *2024 Handbook Welcome*; **Compl.** ¶ 23. All SEMI ARC employees are expected to abide by the procedures and work rules laid out in its Employee Handbook, which was most recently updated in 2024. **Ex. 7; Compl.** ¶ 24.

## III.   Jamie Young-Anderson's NLRB Charge.

Jamie Young-Anderson was hired by the SEMI ARC on March 31, 2015 as a Manager-in-Training, and she eventually voluntarily transferred to a Dispatcher position in January 2016. **Compl.** ¶ 25. After years of unprofessional and disrespectful conduct, Young-Anderson was put on a Performance Improvement Plan ("PIP") on August 10, 2023, and she was terminated on April 15, 2024 for violating her PIP by yelling and exhibiting aggressive body language towards her supervisor. **Compl.** ¶ 26. On October 25, 2024, Young-Anderson filed an Unfair Labor Practice Charge with the NLRB alleging that the Salvation Army violated Section 8(a)(1) of the NLRA by: (1) terminating her in retaliation for protected concerted activity, and (2) maintaining overbroad work rules. **Exhibit 8**, *Young-*

*Anderson NLRB Charge*. On January 29, 2025, Young-Anderson filed a First Amended Charge; however, the allegations contained therein were identical to those contained in the October 25, 2024 Charge. **Exhibit 9**, *Young-Anderson First Amended NLRB Charge*. Young-Anderson later requested to withdraw the portion of her charge alleging that the Salvation Army discharged her in violation of Section 8(a)(1) of the Act, and the Regional Director, Elizabeth Kerwin, approved Charging Party's request on February 19, 2025. **Exhibit 10**, *02.19.25 Letter*. Consequently, the only remaining claim before the NLRB is that the Army allegedly violated Section 8(a)(1) by maintaining overly broad rules. **Ex. 10.**

On May 1, 2025, the NLRB Acting General Counsel, through Region 7 Regional Director Elizabeth Kerwin, issued a Complaint and Notice of Hearing. **Exhibit 11**, *NLRB Complaint and Notice of Hearing*. On May 13, 2025, the Salvation Army filed its Answer to the NLRB Complaint vehemently denying the allegations contained therein and setting forth its affirmative defenses; it filed an Amended Answer on January 7, 2026. **Exhibit 12**, *The Salvation Army's Amended Answer to NLRB Complaint*. The hearing date regarding the alleged overbroad work rules was rescheduled multiple times and is currently scheduled for January 27, 2026. **Exhibit 13**, *08.22.25 Order Rescheduling Hearing*.

On December 29, 2025, the Salvation Army timely filed its Motion to Dismiss with the NLRB Executive Secretary notifying the NLRB that it cannot exert

jurisdiction over the Salvation Army because doing so would violate the Salvation Army's First Amendment right to manage its employees consistent with its religious mission pursuant to *Catholic Bishop* and its progeny of cases. **Exhibit 14**, *The Salvation Army's Motion to Dismiss NLRB Complaint and Reply in Support*. As of the date of this filing, the NLRB has not dismissed its Complaint against the Salvation Army, despite its First Amendment obligation to do so.

## STANDARD OF REVIEW

When determining whether to grant a motion for a temporary restraining order or a preliminary injunction, district courts look to four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *NE Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc., v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

## ARGUMENT

I.    **This Court has jurisdiction to intervene when the NLRB exceeds its statutory authority.**

Not only does this Court have federal question jurisdiction over the constitutional issues in this matter, this Court also has jurisdiction over original suits

7

which allege that the NLRB has deprived individuals "of a 'right' assured to them by Congress … to prevent deprivation of a right so given." *Leedom v. Kyne*, 358 U.S. 184, 189 (1958). The federal courts have jurisdiction to "strike down an order of the Board made in excess of its delegated powers and contrary to specific prohibition in the [National Labor Relations Act.]" *Id*. at 188. Where, as here, the Board "attempt[s] [to] exercise of power that had been specifically withheld" by Congress, the federal courts have jurisdiction and an obligation to ensure the Board does not exceed its statutory authority. *Id*. at 189.

## II.     The Salvation Army has a strong likelihood of success on the merits because it plainly meets all three elements of the *Great Falls* test, which dictates that the Board is constitutionally barred from exerting jurisdiction over it.

The First Amendment prohibits government interference with the internal affairs of religious organizations. U.S. CONST. amend. I, § 2. It is well-established that the Free Exercise Clause and the Establishment Clause bar the government from regulating employment relationships where doing so would entangle it in ecclesiastical decisions. *Catholic Bishop*, 440 U.S. at 499. As an agency created by Congress, the Board is subject to the limitations imposed by the First Amendment to protect religious organizations. *Id*. ("That there are constitutional limitations on the Board's actions has been repeatedly recognized by [the Supreme] Court even while acknowledging the broad scope of the grant of jurisdiction."); *see also Bethany College*, 369 NLRB No. 98 (2020) (The Board's "rights are subordinate to those

8

enshrined in the Constitution and where there is a *potential* conflict between the two."); *Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 828 (D.C. Cir. 2020) ("[R]recognizing the risk of violating the Religion Clauses, the Board generally will not assert jurisdiction over nonprofit, religious organizations, and it disclaims jurisdiction over religious institutions which operate in a conventional sense using conventional means.").

> **A.** **The First Amendment prohibits Board interference in religious organizations' management of their employees under *Catholic Bishop* and its progeny of cases.**

The Board cannot exercise jurisdiction over church-operated organizations because doing so "presents a significant risk that the First Amendment will be infringed." *Catholic Bishop*, 440 U.S. at 502. As explained by the Supreme Court in *Catholic Bishop*:

> The resolution of such charges by the Board, in many instances, will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the [organization's] religious mission. It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions.

*Id*. at 502 (emphasis added). Consequently, "in the absence of a clear expression of Congress' intent to bring [employees] in church-operated [organizations] within the jurisdiction of the Board, [the Supreme Court] decline[d] to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive

questions arising out of the guarantees of the First Amendment Religion Clauses." *Id*. at 507.

In the decades that followed *Catholic Bishop*, appellate courts and the Board endeavored to develop clearer jurisdictional boundaries. The D.C. Circuit's decision in *University of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002), established a three-prong test to determine when the Board is constitutionally barred from asserting jurisdiction over a religious employer. This test asks whether the employer: (1) holds itself out to the public as a religious institution, (2) is a nonprofit, and (3) is religiously affiliated. *Id.* at 1347. If these elements are met, the Board <u>must</u> decline jurisdiction to avoid unconstitutional entanglement in religious affairs. *Id.*

Recently, the Board reaffirmed *Great Falls* as the controlling standard for jurisdiction over religiously affiliated institutions. *Bethany College*, 369 NLRB No. 98 (June 10, 2020). The Board emphasized that <u>when the *Great Falls* prongs are met, it cannot inquire further into whether employees perform religious functions without violating the First Amendment</u>. *Id.* at 11. It reiterated that any inquiry attempting to distinguish between "secular" and "religious" duties or activities of faculty members at church-operated schools risks entangling the Board in matters protected by the First Amendment's Religion Clauses. *Id.*

The *Great Falls* analysis was affirmed once again in *Jewish Community Center of Greater Columbus*, 2025 NLRB REG. DIR. DEC. LEXIS 20, in which the

Director of NLRB Region 9 dismissed a representation petition. *Id.* at 1. Although the petitioner argued that the employer operated as a secular human service agency running childcare centers, the Regional Director found that the employer qualified as a religious institution because it advertised to students, faculty, and the public that it provided a religious educational environment through Judaic programming, Hebrew instruction, and religious observances like Shabbat. *Id.* at 20. Significantly, the Regional Director rejected the argument that *Bethany College* should be limited to institutions of higher education, affirming that the test applies to religious institutions generally. *Id.* at 21-22.

> **B.      The Salvation Army unequivocally meets all three elements of the *Great Falls* test, and consequently, the Board is constitutionally barred from asserting jurisdiction over it.**

To qualify as a religious employer under *Great Falls*, an employer must: (1) hold itself out to the public as a religious institution, (2) be organized as a nonprofit, and (3) be religiously affiliated. *Id.* at 1347. The Army meets all three of these elements, and consequently, the Board wholly lacks jurisdiction in this matter. *Id.*

*The Salvation Army publicly identifies as a religious organization, providing a religious educational environment to SEMI ARC participants.* On the Salvation Army's international website, it promulgates its religious mission statement:

> The Salvation Army, an international movement, <u>is an evangelical part of the universal Christian Church.</u> Its message is based on the Bible. Its ministry is motivated by the love of God. <u>Its mission is to preach the</u>

<u>gospel of Jesus Christ and to meet human needs in His name without discrimination</u>.

**Ex. 5.** The website further describes the history of the church and how the founder "abandoned the concept of the traditional church pulpit in favor of taking the gospel of Jesus Christ directly to the people" and converts to his faith "became soldiers of Christ and were known then, as now, as Salvationists." **Ex. 4.**

The rehabilitation services offered at SEMI ARC are inherently educational as demonstrated by the program workbooks (**Ex. 15**) and job descriptions of the SEMI ARC employees (**Ex. 6**). For instance, on page two of the *Exploring the 12 Steps* workbook (**Ex. 15**), it explicitly states that "This Journal provides <u>an opportunity to learn</u> about 12-Step programs, how they work, and how they can be of help to you"; on page 4, it states, "the Salvation Army focuses on a <u>biblically based Christian approach</u>." Similarly, in the Spiritual Counselor job description, it states that they will "<u>teach program classes</u>" and essential function of the role is to "conduct classes and group sessions for beneficiaries[.]" **Ex. 15**. Based on the documentary evidence alone, SEMI ARC is a religious educational institution.

Moreover, the overarching principles in *Catholic Bishop* go beyond just educational settings. "[C]ases involving nonteaching employees may present facts that lead the Board into even deeper entanglements with an institutions religious mission." *Saint Xavier Univ*., 365 NLRB 566, 572-573 (2017). Acting NLRB Chairman Miscimarra has repeatedly expressed these concerns and has advocated

12

for the Great Falls test to be adopted "in all cases involving religiously affiliated institutions – regardless of the faculty or non-faculty status of the petitioned-for employees in any particular case[.]" *Id*. at 573. *Seattle University*, 364 NLRB No. 84 (2016); *Saint Xavier University*, 364 NLRB No. 85 (2016); *Pacific Lutheran University*, 361 NLRB No. 157 (2014).

In its Response to The Salvation Army's Motion to Dismiss, the General Counsel's office argued that the Board should apply the standard in *Hanna Boys Center*, 284 NLRB 1080 (1987) instead of *Great Falls*. But as explained by Miscimarra, the Board in *Hanna Boys* unconstitutionally probed into the religious organization's mission, which was the very process prohibited by *Catholic Bishop*:

> Indeed, the facts of *Hanna Boys Center* itself illustrate this danger. The child-care workers' job functions did include duties that touched on matters of religion: they shepherded the boys to chapel, saw to it that the boys completed their homework for their moral guidance course, and made sure the boys said their prayers. The majority's test requires the Board to sift through facts like these and decide whether they render a petitioned-for unit of non-teaching employees "sufficiently religious" to warrant declining jurisdiction. Accordingly, inherent in the *Hanna Boys* test is at least the "*potential* for involving some aspect of faith or morals" in the Board's inquiry, an outcome the Supreme Court deemed unacceptable in *Catholic Bishop*.

*Saint Xavier Univ*., 365 NLRB at 573. To the extent that the Board (or this Court) determines that SEMI ARC is not an educational environment, it should follow Miscimarra's approach and apply the *Great Falls* analysis regardless.

This danger is even greater here than it was in *Hanna Boys* because the claims are limited to just an allegation that the Salvation Army maintained certain overbroad workrules. These work rules apply to all SEMI ARC employees. This makes the jurisdictional reach much broader than that in *Hanna Boys* where "the two voting units encompass clerical employees, recreation assistants, cooks, their helpers, and child-care workers." 284 NLRB 1080, 1083 (1987). Contrary to the General Counsel's office's assertion, the work rules at issue apply to employees that plainly fall within the ministerial exception as well. Some jobs obviously fall within the ministerial exception, like the Lead Spiritual Counselor and Spiritual Counselor positions. **Ex. 6**. And, unlike in *Hanna Boys*, where the childcare workers had no religious involvement, at SEMI ARC, even the Director, Lead Resident Managers, and Resident Managers are all responsible for "assessing spiritual needs of beneficiaries." **Ex. 6**. Unlike a bargaining unit, in an overbroad work rules case, the NLRB cannot extract the ministerial employees from the non-ministerial employees. Thus, the NLRB's attempts to interfere with the work rules, here, will unconstitutionally and impermissibly entangle it in the Salvation Army's religious mission. Importantly, providing humanitaran services is an inherent part of the Salvationists faith. **Ex. 2**. For the NLRB to interfere with how the Salvationists execute this fundamental aspect of their God-given mission is the exact constitutional entanglement prohibited by the First Amendment.

14

*The Salvation Army is a 501(c)(3) nonprofit religious institution*. Since 1913, IRS has determined that the Salvation Army is a public charity "exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code." **Ex. 3**.

*The Salvation Army is religiously affiliated*. The Salvation Army's core mission, operations, and leadership structure are rooted in faith, and its employees are not merely performing secular services, they are furthering the Salvation Army's religious mission through worship, service, and faith-based outreach. **Ex. 2-7**; **Compl.** ¶ 9-24. Asserting jurisdiction over the Salvation Army would require the Board to minimize the essential elements of its Christian faith and the works that grow from such faith. Every employee, regardless of role, participates in carrying out this religious mission, serving not only the community's physical needs but also its spiritual wellbeing. **Ex. 2-7**; **Compl**. ¶ 9-24.

As demonstrated by the documentary evidence produced as exhibits to this Motion and the Verified Complaint, the Salvation Army unequivocally meets all three *Great Falls* elements for a religious employer, and thus, the Board cannot exert jurisdiction over it without violating the First Amendment. As such, the Salvation Army has a strong likelihood of success on the merits in this matter, and this factor strongly favors granting its request for a temporary restraining order.

4924-4579-8276_1

**III.  The Salvation Army would suffer irreparable injury if the January 27, 2026 NLRB hearing is allowed to proceed.**

As explained by the Supreme Court in *Catholic Bishop*, it is not just the NLRB's ultimate decisions that violate a religious organization's First Amendment rights, the "<u>very process of inquiry leading to findings and conclusions</u>" causes equal harm by probing into the religious organization's efforts to further its religious mission. *Catholic Bishop*, 440 U.S. at 502. "The prospect of church and state litigating in court about what does or does not have religious meaning touches the very core of the constitutional guarantee against religious establishment." *New York v. Cathedral Academy*, 434 U.S. 125, 133 (1977).

Subjecting the Salvation Army to the January 27, 2026 hearing will cause such irreparable injury. During the hearing, the Salvation Army's pastors, officers, and employees will be questioned by NLRB attorneys regarding the Salvation Army's work rules, which – as it states in the Welcome page of the Employee Handbook – are designed to further its religious mission. **Ex. 7**. The January 27, 2026 hearing is exactly the sort of "intrusive inquiry that *Catholic Bishop* sought to avoid." *Great Falls*, 278 F.3d at 1341. As recognized by the Supreme Court, governmental interference in religious organizations will likely create "fear of potential liability [which] might affect the way [the Salvation Army] carrie[s] out what it understood to be its religious mission." *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 336 (1987). The Salvation Army "might

16

understandably be concerned that a [NLRB] judge would not understand its religious tenets and sense of mission." *Id*.

Based on this well-established Supreme Court precedent of protecting religion, even the NLRB recognizes must limit its inquiry into religious organizations to the jurisdictional *Great Falls* test. *Bethany Coll*., 369 NLRB No. 98 at 5. However, whether through negligence or willfulness, the NLRB has thus far refused to do so in this matter.

On December 29, 2025, the Salvation Army filed its Motion to Dismiss with the NLRB Executive Secretary notifying the NLRB that it cannot exert jurisdiction over the Salvation Army because doing so would violate the Salvation Army's First Amendment right to manage its employees in accordance with its religious mission pursuant to *Catholic Bishop* and its progeny of cases. **Ex. 14**. As of the date of this filing, the NLRB has not dismissed its Complaint against the Salvation Army, despite its First Amendment obligation to do so.

Importantly, there is a renewed urgency to this matter. For the majority of time that the NLRB's Complaint has been pending, the NLRB was unable to function and/or decide cases because the NLRB has lacked a quorum since January 2025. Consequently, even if the Salvation Army had filed a motion to dismiss notifying the NLRB of its duty to decline jurisdiction during this time, the NLRB would have been unable to do so. This changed on December 18, 2025 with the U.S.

Senate's confirmation of Scott Mayer and James D. Murphy to serve as NLRB members, which restored the requisite quorum of at least three members to decide cases. Once the NLRB was again empowered to make decisions, the Salvation Army filed its motion to dismiss on December 29, 2025 and urged the Board to take prompt action and decline jurisdiction over the Salvation Army to avoid violating the First Amendment. Yet, despite being on notice of its obligation to dismiss Young-Anderson's First Amended Charge and having the power to act, the NLRB has continued to unconstitutionally exert jurisdiction over the Salvation Army, and the January 27, 2026 hearing is still scheduled to proceed. Thus, the Salvation Army faces irreparable injury if this Court does not intervene.

## IV. Staying NLRB Case No. 07-CA-353233 through a TRO would not cause any harm to either the NLRB or Young-Anderson.

The NLRB – a federal agency – will experience no harm if this Court issues the injunctive relief requested – a mere stay on administrative proceedings until this Court determines whether the NLRB has jurisdiction over the Salvation Army. Young-Anderson will experience no harm if this Court issues the injunctive relief requested because the only claims remaining involve allegations of overbroad work rules, which no longer apply to her. Importantly, Young-Anderson is not eligible for reinstatement because she has withdrawn the portion of her charge based on her termination. **Ex. 10**.

4924-4579-8276_1

The stay will actually benefit both the parties and the public by saving valuable time and limited NLRB resources because this jurisdictional issue will ultimately be decided by a federal court – either now or after a lengthy NLRB administrative proceeding. It is the duty of the federal courts – without deference to the NLRB – to resolve any ambiguity regarding the NLRB's jurisdiction as provided by the NLRA. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 403 (2024) ("The very point of the traditional tools of statutory construction – the tools courts use everyday – is to resolve statutory ambiguities. That is no less true when the ambiguity is about the scope of an agency's own power – perhaps the occasion one which abdication in favor of the agency is *least* appropriate.)

## V.   The public interest would be served by upholding the Salvation Army's constitutional rights under the First Amendment.

As expressly stated by the Supreme Court, "[t]he values enshrined in the First Amendment plainly rank high on the scale of our national values." *Catholic Bishop*, 440 U.S. at 501. The public interest would be served by the issuance of an injunction because halting the NLRB's unconstitutional exercise of jurisdiction over a church would uphold the U.S. Constitution and the very framework of religious freedom upon which this country rests.  It would also prevent the NLRB, an agency with limited funds, from expending its resources on an issue that will ultimately be subject to a federal court determination regarding the constitutional issue.

19

## <u>CONCLUSION AND RELIEF REQUESTED</u>

The Salvation Army faces irreparable harm by the NLRB's inevitable probing into its religious mission during the January 27, 2026 hearing. To avoid this harm, the Salvation Army seeks an order <u>prior to January 26, 2026,</u> requiring the NLRB, Carey, and Kerwin: (1) to administratively stay NLRB Case 07-CA-353233, including cancelling the hearing scheduled for January 27, 2026, and (2) to show cause why a preliminary injunction should not issue until this action is adjudicated.

Respectfully submitted,

BODMAN PLC

*/s/ John T. Below*
John T. Below (P48677)
Gary S. Fealk (P53819)
Amanda McSween Empey (P84594)
Bodman PLC
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000
jbelow@bodmanlaw.com
gfealk@bodmanlaw.com
aempey@bodmanlaw.com

*Attorneys for Plaintiff*

Dated: January 14, 2026

20

## CERTIFICATE OF SERVICE

I hereby certify that the attached Motion for Temporary Restraining Order and Show Cause Order will be served upon all Defendants along with the filed Summonses and Verified Complaint via the below service of process pursuant to Fed. R. Civ. P. 4(i):

| **THE NATIONAL LABOR RELATIONS BOARD** | **CRYSTAL CAREY** | **ELIZABETH KERWIN** |
|---|---|---|
| *Certified Mail, Return Receipt Requested*<br>United States Attorney – Eastern District of Michigan<br>Attn: Civil Process Clerk<br>211 W. Fort Street, Suite 2001<br>Detroit, MI 48226<br><br>Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>National Labor Relations Board<br>1015 Half Street SE<br>Washington, D.C. 20570-0001<br><br>NLRB Region 7<br>Patrick McNamara Federal Building<br>477 Michigan Avenue, Room 05-200<br>Detroit, MI 48226 | *Certified Mail, Return Receipt Requested*<br>United States Attorney – Eastern District of Michigan<br>Attn: Civil Process Clerk<br>211 W. Fort Street, Suite 2001<br>Detroit, MI 48226<br><br>Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>National Labor Relations Board<br>Attn: Crystal Carey<br>1015 Half Street SE<br>Washington, D.C. 20570-0001 | *Certified Mail, Return Receipt Requested*<br>United States Attorney – Eastern District of Michigan<br>Attn: Civil Process Clerk<br>211 W. Fort Street, Suite 2001<br>Detroit, MI 48226<br><br>Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>National Labor Relations Board<br>Attn: Elizabeth Kerwin<br>1015 Half Street SE<br>Washington, D.C. 20570-0001 |

4924-4579-8276_1

| | NLRB Region 7<br>Attn: Crystal Carey<br>Patrick McNamara Federal Building<br>477 Michigan Avenue, Room 05-200<br>Detroit, MI 48226 | NLRB Region 7<br>Attn: Elizabeth Kerwin<br>Patrick McNamara Federal Building<br>477 Michigan Avenue, Room 05-200<br>Detroit, MI 48226 |
|---|---|---|

*/s/ John T. Below*
JOHN T. BELOW (P48677)

4924-4579-8276_1